STATE OF MISSISSIPPI *v.* BOARD OF SUPERVISORS OF COAHOMA COUNTY.

1. SUPREME COURT PRACTICE. *Defective appeal. Amendment.*

   In no case can a party lose the benefit of an appeal to this court by any error as to the manner of appealing; the appeal, if defective, may be perfected here under § 1407, Code of 1880.

2. SAME. *Appeal-bond. Appeal by the State. Case in judgment. Section 2333, Code of 1880, applied.*

   The State, by its attorney general, petitioned for a mandamus to compel the Board of Supervisors of the County of C. to hold a special election under an act of the legislature authorizing such an election to be held to determine the location for the county site of such county. The judge having refused to grant the writ, allowed the State to appeal without giving any bond. *Held,* that the judge correctly dispensed with an appeal-bond under § 2333, Code of 1880, which provides that the State may appeal without bond in any suit or action in which it is "beneficially interested."

3. APPROVAL OF BILL.   *After adjournment of legislature.   Constitutional provisions constrened.*

Section 24, article iv, of the State constitution, provides that "Every bill which has passed both houses [of the legislature] shall be presented to the governor of the State.  If he approves he shall sign it. * * *  If any bill shall not be returned by the governor within five days (Sunday excepted) after it has been presented to him it shall be a law, in like manner as if he had signed it, unless the legislature by adjournment prevented its return, in which case it shall be a law, unless sent back within three days after its next meeting."  Under these provisions, a bill duly passed by both houses of the legislature, and presented to the governor within five days before the adjournment of the legislature, may be signed and approved by him, and be thus made a law at any time before or after such adjournment and before the expiration of the three days after the next meeting of the legislature.  *Hardee* v. *Gibbs,* 50 Miss. 802, overruled.

4. STATUTE.   *Speaks from approval.   Case in point.*

An act of the legislature speaks from the date of its approval by the governor, and where an act passed by the legislature on March 16, 1886, but not approved until August 26, 1886, orders an election to be held in "August next," such language must be held to refer to August, 1887, and not to August, 1886.

5. MANDAMUS.   *When asked prematurely.   Case in judgment.*

And in the above-stated case a mandamus to compel the proper authorities to hold such election cannot be granted on a petition presented on January 8, 1887, it being presumed that such authorities will do their duty at the proper time.

APPEAL from the decision of HON. J. H. WYNN, Judge of the Fourth Judicial District.

On March 15, 1886, a bill passed the two houses of the legislature, entitled " An Act to submit to the qualified electors of Coahoma County the removal and location anew of the county site of said county," and providing " that a special election be held on the first Tuesday in August next " to determine that question.  On March 16, 1886, this bill was presented to the governor for his approval.  On March 18, 1886, the legislature adjourned *sine die.* On August 26, 1886, the governor approved and signed this bill and put it in the hands of the secretary of state.  On December 13, 1886, the Board of Supervisors of Coahoma County refused to

order an election, in accordance with this act, to be held on January 4, 1887. Thereupon, on January 8, 1887, the State, on the relation of its attorney general, T. M. Miller, by petition, prayed a writ of mandamus to compel the board of supervisors to order an election to be held at as early a day as possible, under and in accordance with the provisions of this act.

The board of supervisors plead that the prayer of the petitioner should not be granted, (1) because the act in question never became a law; (2) if did become a law, that the time for holding such an election had passed, to wit, the "second Tuesday in August next," meaning August, 1886. The case was heard in vacation and the judge dismissed the petition. The petitioner prayed an appeal. The judge granted the appeal without requiring any bond. The appellees made a motion in this court to dismiss the appeal because of the failure of petitioner to give the usual appeal-bond. This motion and the case upon its merits are considered and disposed of together in the opinion hereinafter following.

*Cutrer & Cutrer,* for the appellant.

1. This is a suit brought by the State of Mississippi, by its attorney general, in a matter affecting the public interest. High's Ex. Leg. Rem., §§ 430a, 431 *et seq.;* Code 1880, § 2551; *vide,* also, § 2542; and no appeal-bond was necessary.

In the event, however, the court should be of opinion that an appeal-bond should have been given, the failure to give it does not deprive this court of jurisdiction. A filing of a transcript of the record is all that is necessary to confer power to dispose of the case. Code 1880, § 2322. After that is done, the court has authority to make all orders and impose all conditions, to require that all omissions, irregularities, and defects be cured by substitution or amendment, that it may deem necessary to perfect the appeal and obtain the judgment of the superior court. And such appeal shall be dismissed only on failure of appellant, within a reasonable time, to perfect his appeal in the manner indicated by the court. Code 1880, §§ 1406, 1407.

2. We submit to the court that the former decision of the question as to the validity of an act of the legislature, signed by the governor after adjournment of the legislature, is not sound in

principle, is unwarranted by the language and terms of the constitution, and is directly opposed to the weight of authority.

The court in that case, *Hardee* v. *Gibbs*, 50 Miss. 802, bases its conclusions upon the mistaken theory that the governor is a component part of the legislature in making laws, and, therefore, he can do no *legislative act, i. e.*, he can neither sign nor approve bills, except when the legislature is in session. The theory has nothing but dicta for its support, and the best courts of the country have repudiated it whenever occasion has arisen.

The very question at issue has been decided in favor of the validity of the law in the adjoining State of Louisiana, under a constitution seemingly less favorable to the exercise of the right of the governor to sign a bill after the adjournment of the legislature than § 24 of article iv of the constitution of Mississippi. *Vide The State of Louisiana ex rel. S. Belden, Attorney General,* v. *Wm. Fagan et al.*, 22 La. Ann. 545.

The same may be said of the Supreme Court of New York construing a similar clause of the constitution of that State. *Vide The People of the State of New York by their Attorney General* v. *James Bowen et al.*, 30 Barbour 24.

The reasoning of the court in this case is particularly clear, forcible, and conclusive, and its conclusion is not to be dissented from.

The Supreme Court of the United States has made its latest enunciation of the law on this subject. That court has no hesitation in saying that the signature of approval of the governor after adjournment of the legislature is effectual to give the bill signed validity as a law. *Seven Hickory* v. *Ellery*, 103 U. S. 423.

3. It is said that the *legislative intent* was that the election contemplated should be held in 1886. This cannot be. The *legislative intent* spoken of comes into existence and takes effect only by and from the date and fact of approval, so that the words " August next " mean *August next after approval*. There is no conflict of authorities on this point. The board must appoint commissioners to hold the election *required to be held* on the first Tuesday of August, 1887. No *finesse* as to what the legislature *may have*

*meant* had the act been approved at an earlier day can avail to protect appellee in its refusal to discharge its plain duties *under the law as it is.*

4. Mandamus lies to enforce the appointment of these commissioners in ample time to insure the prompt holding by them of said election on the day fixed therefor by law. They refuse to appoint unless enforced, and otherwise the law fails totally of effect. High's Ex. Legal Rem. 450.

*D. A. Scott & George Winston,* for the appellee.

1. The appellant is not entitled to an appeal without bond. Section 2333 of the Code of 1880 does not apply to such a case. The State is not " beneficially interested " in the suit. It is apparent from the petition that neither the State as such nor the people of the State generally have any direct interest, pecuniary or otherwise, in the suit. Only the County of Coahoma has any interest in the suit, and the board of supervisors of that county, the only representatives of said county who are parties to the suit, are defendants and ask no appeal.

The fact that the suit is brought in the name of the State does not make it a matter of State or public interest. *State* v. *Myers,* 61 Miss. 138.

2. In the case before the court the governor signed and approved the act in August some five or six months after the act was presented to him, and after the adjournment of the legislature, and the court is asked to reverse the decision of *Hardee* v. *Gibbs,* 50 Miss. 802, and to hold that approval of the governor was proper and gave validity to the act from the date of such approval. It is contended that the current of authority outside of the State would support such a decision. It is submitted that this is not the case, but that, on the contrary, where the act is approved in vacation after the expiration of the time allowed by the constitution for the consideration by the governor of bills, five days in this State, the current of authority is against the validity of such approval. How do the authorities stand?

Mr. Cooley in his Constitutional Lim. approves the view that the governor in approving an act performs a legislative function;

that in doing such an act he is a component part of the legislature, and that in the vacation of the legislature he cannot approve an act at any time. Const. Lim. 155.

The same view is held by the Supreme Courts of California and of this State. *Fowler* v. *Pierce*, 2 Cal. 165; *Hardee* v. *Gibbs*, 50 Miss. 802.

The Supreme Courts of Georgia, New York, and of the United States hold that the governor can sign and approve an act of the legislature after its adjournment *only* within the short time which he is given by the constitution to consider and sign or veto an act while the legislature is in session. *Soloman* v. *Comm. Cartersville*, 41 Ga. 157; *People* v. *Bowen*, 21 N. Y. (7 Smith) 517; *Seven Hickory* v. *Ellery*, 13 Otto 423.

There is only one case which I have been able to find holding the doctrine contended for by the appellant, *i. e.*, that the governor may sign and approve an act at any time in the vacation of the legislature, and that is the case of the *State ex rel., etc.,* v. *Fagan et al.*, 22 La. Ann. 546.

3. If the act was properly approved by the governor, and went into effect from the date of such approval, *i. e.*, on the 26th of August, 1886, the question arises when the legislature intended that the election provided for should be held, whether on the first Tuesday of August, 1886, or the first Tuesday in August, 1887.

The first section of the act provides that a special election be held on the "first Tuesday in August next," etc. It does not provide that the election shall be on the first Tuesday in August next *after its passage or after it went into effect*. The act passed the house on the fourth of March, 1886, and the senate on the fifteenth of March, 1886, and there can hardly be a doubt that the intention of the legislature was that the election should be held on the first Tuesday of August, 1886. If this be the true construction, the election could not be held at that time, because the act was not approved until the twenty-fourth day of August, 1886.

4. Should it be held that the intention of the act is that the election should be held on the first Tuesday in August after it takes effect, then such election cannot be held until the first Tuesday in

August, 1887, and this suit is premature. The agreed state of facts does not show any default in the performance of a present duty. There must be such default before mandamus will lie. The writ is never granted in anticipation of a supposed omission of duty or in doubtful cases. High on Ex. Rem., §§ 12 and 9.

CAMPBELL, J., delivered the opinion of the court.

The State had the right to appeal without giving an appeal-bond. Code, § 2333. Were this not true the appeal would not be dismissed, but a bond or deposit would be received and the appeal be maintained. In no case can a party lose the benefit of an appeal by any error as to the manner of appealing. The appeal may be perfected here. Code, § 1407. The motion to dismiss the appeal is denied.

The record presents the question whether a bill which has passed both houses and been signed by their respective presiding officers and presented to the governor within five days of the adjournment of the legislature, may be signed by the governor and thereby be made a law from that time, after the adjournment of the legislature?

In *Hardee* v. *Gibbs*, 50 Miss. 802, this question was answered in the negative, but we have no hesitation to overrule this decision, which is not supported by reason or authority, and plainly shows a lack of attention to or comprehension of the language of the constitution. The postulate of the opinion in that case is that the governor, in approving bills, is a component part of the legislature, and his *signing* a bill is a legislative act, and therefore it was said he has no more power to legislate in vacation than either house of the legislature. Grant that the governor in signing a bill, and thereby evidencing his approval, does perform a legislative act, it is as governor he acts, as prescribed by the constitution, and he is governor after the adjournment of the legislature as much as before. The constitution makes the governor an agent in making laws. Every bill passed by the two houses is to be presented to him. If he approves he shall sign it; if not he shall return it with objections within five days (Sunday excepted) to the house in

which it originated, or it shall be a law without his signature, unless the legislature by adjournment prevent, in which case it shall be a law at the end of three days after the next meeting of the legislature if not sent back by the governor with his objections in that time. The scheme of the constitution is that the legislature and the governor shall make laws, and it prescribes how this is to be done. The two houses compose the legislature. It is to pass bills, and they are to be presented to the governor, who is to sign if he approve, or return with his objection if he does not approve; and that he may have time to determine his action, five days (Sunday excepted) are allowed him, during the session of the legislature, in which to consider each bill, which is to be a law by the lapse of that time during the session of the legislature, with or without his signature, on the assumption that, if he does not return the bill, as he may, with his objections, he approves it. While the legislature is in session laws are passed by a majority of each house, with the approval of the governor expressed by his signing, or implied by his failing to return the bill with objections in the five secular days allowed him, or by two-thirds of each house notwithstanding his objections. But if the legislature, by an adjournment before the governor has had five days to act on the bill, prevent a return of it with his objections, he is allowed all of the time before the three days after the next meeting of the legislature shall expire to send back the bill disapproved, and if he does not so return it, it shall be a law by mere effluxion of time. *A fortiori* should it be a law when the governor approves and signs it. It has then received the constitutional impress which makes it a law. It passed both houses, it was presented to the governor, he approved it, and he signed it. This is what the constitution says shall make a law. There is not a word in the constitution to suggest that the governor, whose functions as such are not dependent on sessions of the legislature or limited to them, shall be limited to the period of the session of the legislature in performing his agency in making laws. He must return a bill with his objections in five days during the session of the legislature or it will be a law, but this gives no countenance to the proposition that because the legislature adjourns

within the five days allowed him for considering bills during its session, he may not act as governor and sign the bill, which only lacks his approval to complete the several stages prescribed by the constitution for it to become a law. A time is prescribed by the constitution in which the governor may return a bill with his objections. That time is five days during the session of the legislature, and the whole interval between adjournment and three days after the next meeting of the legislature in case of bills presented to the governor within five days of the adjournment of the legislature. No time is prescribed by the constitution in which the governor shall sign if he approve. Manifestly, as he may return with objections in five days during the session, he may sign any day during that time, and as he may return with his objections within three days after its next meeting, in case the legislature by adjournment prevented its return (after the time for consideration and before adjournment) during its session, he may sign the bill any day of the period allowed him in which to return it. Why should the validity of the act of the governor in signing a bill depend on his performance of it while the legislature is in session?

Is not the approval by the governor, signified by his signing it, what the constitution requires to convert the bill into a law, because of the concurrence of the two houses and the governor in its expression? Is the approval of the governor, as evidenced by his signing the bill, any less potent because done in the vacation of the legislature? It acted, it passed the bill, and adjourned. It then rested with the governor to deal with this completed act of the two houses. It is not yet a law, but a bill. It must receive the approval of the governor to be a law. What hinders his performance of duty as governor with respect to this bill which has passed both houses and been presented to him? Were the legislature in session he must act independently and as governor in dealing with the bill. If he signs he converts the bill into law by his signing. He may inform the legislature or either house of the fact that he has signed, but he need not do this. It is a mere courtesy. His signing makes the bill a law, and its validity does not depend on

his making any communication to the legislature or either house on the subject. If he disapproves a bill he must return it with his objections, but if he approves he is to sign it, and need never communicate with either house on the subject. The finishing act by which a bill is transformed into a law is the governor's approval as shown by his signing, and that may be as long as he has the bill in his hands for his official action. So long as he may return it with his objections he may convert the bill into a law by his approval and signing. So long as he may disapprove and return the bill with his objections he may assent to the expressed will of the two houses, and as governor unite with the legislature in passing a bill into a law.

Such is the obvious scheme of the constitution. Its provisions are so plain as to exclude interpretation. Argument cannot make them plainer. The opinion in *Hardee* v. *Gibbs* rests on the erroneous assumption that, because the governor in signing a bill performs a legislative act, he must do it during the session of the legislature. Whatever the nature or proper designation of his act in reference to bills passed by both houses and presented to him, he acts independently as governor in pursuance of the constitutional provision, and nothing in the constitution requires or suggests that his performance of his constitutional duty in acting with reference to bills presented to him shall be performed while the legislature is in session, but the contrary is plainly suggested by the constitution, and the assertion that he cannot sign a bill in vacation is unwarranted by anything in the language of that instrument or in the nature of the duty to be performed by the governor as a component part of the law-making power.

Our view is abundantly supported by the reasoning of the following cases: *State* v. *Fagan*, 22 La. An. 545 ; *People* v. *Bowen*, 30 Barb. 24 ; *Same Case*, 21 N. Y. 517 ; *Seven Hickory* v. *Ellery*, 103 U. S. 423.

Even without such support we should feel constrained by the unmistakable language of the constitution to overrule the former decision.

The governor was authorized to sign the bill in vacation, as he

did, and it thereby became an act of the legislature. But this action of mandamus is premature. By the terms of the act, approved August 26, 1886, an election is to be ordered and held in August next, *i. e.,* August, 1887, for the act speaks from the date of its approval. It is not to be assumed, and on that assumption to base a judicial proceeding, that the body charged with a duty under this act will not perform it at the proper time. A presumption must be indulged that duty will be performed.

*Affirmed.*