276 So.2d 678 (1973)
Ben E. PITTMAN
v.
ALLENBERG COTTON COMPANY.
No. 47037.
Supreme Court of Mississippi.
April 16, 1973.
Rehearing Denied May 14, 1973.
Ellen E. Goldman, Marks, Charles C. "Cliff" Finch, M. Collins Bailey, Richard T. Phillips, D. Briggs Smith, Jr., Anna C. Madden, Batesville, for appellant.
Maynard, Fitzgerald, Maynard & Bradley, Clarksdale, for appellee.
*679 SMITH, Justice:
Allenberg Cotton Company, a Tennessee corporation, brought suit in the Chancery Court of Quitman County against Ben E. Pittman for injunctive enforcement of a contract for the purchase by it of cotton produced by Pittman in the year 1971 on 700 acres of his land in Quitman County, Mississippi. Under the terms of the contract, Pittman was required to plant, cultivate and harvest a crop of cotton on the land, employing methods provided in the contract, then to deliver it to Valley Gin Company in Marks, Mississippi for ginning. Under the contract, Allenberg retained certain control as to methods to be employed in the production of the cotton, and, after ginning, Pittman was obligated to deliver the bales for the account of Allenberg at the warehouse of Federal Compress and Warehouse Company at Marks, Mississippi. The contract also provided a formula for determining amounts to be paid for the cotton. The bill of complaint alleged a refusal on the part of Pittman to deliver the cotton, and in addition to injunctive relief, demanded damages for breach of contract.
Allenberg Cotton Company, a Tennessee corporation, had never qualified to do business in the State of Mississippi. Its charter, granted by the State of Tennessee, among other things, authorized it:
Section A: To carry on the business of cotton merchants including the buying and selling of spot cotton, the dealing in cotton futures, the storing, warehousing, insuring, and hedging of the cotton and cotton sales or puchases; [sic] the borronwin [sic] or lending of money, unsecured, or secured by cotton warehouse receipts or otherwise, and in general, any other business that may be allied therewith, *680 or ancillary thereto, or useful in the advancement of the general purposes of the business of cotton merchants, and any other business that can be conducted along with said business, or that might advance the purposes, including the right to deal in any commodity by the actual sale or purchase of same by private negotiations or on any organized market, and also including the purchases or sales of future contracts or hedges for any such other commodity.
Pittman set up several defenses in his answer, and pleaded that Allenberg Cotton Company was a foreign corporation, doing business in Mississippi, but it had never qualified to do so by securing a certificate of authority as required by Mississippi Code 1942 Annotated section 5309-221 (Supp. 1972). Pittman alleged that, as a consequence of this failure to qualify, Allenberg was not entitled to maintain its suit under the provisions of Mississippi Code 1942 Annotated section 5309-239 (Supp. 1972), which is (in part) as follows:
No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state. Nor shall any action, suit or proceeding be maintained in any court of this state by any successor or assignee of such corporation on any right, claim or demand arising out of the transaction of business by such corporation in this state.
The proof showed that Allenberg had arranged with one Covington, a local cotton buyer, with his office in Marks, Mississippi, to act for them (although it is denied that this made him its agent) "to contract cotton" from cotton farmers to be produced in Quitman County, Mississippi. Although Covington had performed this service for another company in 1967, in 1970 and in 1971 he acted exclusively for Allenberg. Under his arrangement with Allenberg, Covington would contact Quitman County farmers and, if they agreed to produce and sell their cotton crop to Allenberg, he would obtain all information necessary to the preparation of a purchase contract, telephone this information to Allenberg's Memphis office where a contract would be prepared and signed by an official of Allenberg. This document would then be forwarded to Covington at his office in Marks. On its receipt, Covington would get in touch with the farmer who would then come into Covington's office in Marks and there execute the contract. One copy would be retained by Covington in his Marks office, one copy would be given to the farmer and the third copy sent to Allenberg Cotton Company. For these services Covington received a commission on each bale of cotton delivered to Allenberg's account at the warehouse. Covington kept a record of these contracts in his Marks office, including a record of whether the farmers were delivering as required by their contracts. Farmers were paid for cotton delivered under the Allenberg contracts by Covington who drew upon Allenberg for the money.
Covington testified that the Pittman contract, here involved, had been brought personally to his office in Marks by the official of Allenberg who was in charge of the "Memphis Territory" which included Mississippi. He recalled that seven or eight other similar Quitman County contracts had also been brought down at the same time. He stated that usually, but not always, the contracts were mailed to him by Allenberg and that actually it was not necessary for an official of the company to come to Marks, saying "I could tend to it. I reckon I was supposed to do something." He stated that he kept up with whether deliveries of cotton were being made by the farmers as required by the contracts and that some contracts were "adjusted" by an official of Allenberg who would come down to Quitman County for that purpose.
It appears that Allenberg, through its representative, Covington, by whatever name called, in the year 1971 alone, the second year of its Mississippi operation, made 20 to 25 similar contracts covering *681 9,000 acres of cotton land in Quitman County, Mississippi.
It is apparent that these transactions of Allenberg in each case, including that with Pittman, took place wholly in Mississippi. The contract was negotiated in Mississippi, executed in Mississippi, the cotton was produced in Mississippi, delivered to Allenberg at the warehouse in Mississippi, and payment was made to the producer in Mississippi. All interest of the producer in the cotton terminated finally upon delivery to Allenberg at the warehouse in Marks. The fact that afterward Allenberg might or might not sell the cotton in interstate commerce is irrelevant to the issue here, as the Mississippi transaction had been completed and the cotton then belonged exclusively to Allenberg, to be disposed of as it saw fit, at its sole election and discretion.
The facts stated were developed upon the hearing of the plea and are without substantial dispute. The chancellor held, however, that Allenberg was not doing business in Mississippi within the meaning of the statute. It having been stipulated that no further defense would be offered, the court entered a decree awarding Allenberg judgment against Pittman for $18,156.00 as damages sustained because of his breach of the contract. This appeal has been prosecuted by Pittman from that decree.
It is argued on behalf of Allenberg that its Mississippi activities fall within the following statutory exceptions.
Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this Act, by reason of carrying on in this state any one or more of the following activities:
......
(d) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.
(e) Transacting any business in interstate commerce.
We cannot agree. The entire transactions with respect to Mississippi cotton contracts took place in Mississippi. The contracts were not "orders", within the commonly accepted meaning of that word, "requiring acceptance without this state before becoming binding contracts." Aside from the fact that they were not "orders", they became contracts only when executed by the producer at Marks, Mississippi.
The affixation of Allenberg's signature in Memphis to a contract form before it was sent or brought to Marks for execution by the producer in nowise made it a contract prior to its acceptance and execution by the producer at Marks. Nor is the transaction converted into interstate commerce because, after the cotton had been delivered to Allenberg at the warehouse in Marks and title thereto had become vested in Allenberg in Mississippi, Allenberg, at its own election and for its own purposes, might afterward sell it in interstate commerce.
In order to maintain an action in a court of this State, a foreign corporation doing business in this State must qualify as required by the statute at the time the cause of action accrued. Parker v. Lin-Co Producing Company, 197 So.2d 228 (Miss. 1967).
Nor may a foreign corporation, doing business in Mississippi without having qualified as required by statute, maintain an action in a court of this State to enforce a cause of action which accrued as the result of doing such business. Bunge Corporation v. St. Louis Terminal Field Warehouse Company, 295 F. Supp. 1231 (N.D. Miss. 1969).
Where the charter of a foreign corporation provided that it was formed to sell, lease and exchange real estate of all kinds, and such corporation obtained a lease upon Mississippi real property for a ten year term, and thereafter renewed it for an additional ten years, and paid rentals under *682 the provisions of such renewal and initial leases and sought an option to purchase the real estate, the corporation was held to have been "transacting business" in Mississippi within the meaning of the statute. S & A Realty Company v. Hilburn, 249 So.2d 379 (Miss. 1971).
The plea should have been sustained and Allenberg's suit should have been dismissed. The judgment appealed from is, therefore, reversed and judgment is entered here sustaining the plea interposed by Pittman against the right of Allenberg to maintain its suit against him in the Mississippi Court, and the suit is dismissed.
Reversed and judgment entered for appellant.
GILLESPIE, C.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.